UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JEWEL SHEPARD,

           Plaintiff,

    vs.

RICHARD K. BELL, *et al.*,

           Defendant.

3:15-cv-00058-RCJ-VPC

**ORDER**

This case arises from the alleged conduct of the various Defendants related to property awarded to Plaintiff's ex-spouse, Defendant Richard K. Bell ("Bell"), in the parties' divorce decree. Pending before the Court are Motions for Demand of Security of Costs by Defendants Bell, Cheryl Lynn Zittle Sell-Bell ("Zittle"), and Alison Colvin ("Colvin") (ECF Nos. 10, 11).

Also pending are Motions to Dismiss for Lack of Subject-Matter Jurisdiction filed by Defendants Keller Williams Group One, Inc. ("Keller Williams") and Nan Carpenter ("Carpenter") (ECF Nos. 13, 15). Plaintiff has also submitted a Motion to Strike the Reply filed on the Motions for Demand of Security of Costs (ECF No. 25).

I.     **FACTS AND PROCEDURAL HISTORY**

Plaintiff and Bell were divorced in October 2010 after sixteen years of marriage. (Compl. ¶ 1, ECF No. 1). As part of the Marital Settlement Agreement and Divorce Decree ("MSA"), the couple's property located at 2345 Goodman Road, Reno, Nevada 89521 ("Goodman Property")

was given to Bell "along with the debt associated with it as his sole and separate property . . . ." (MSA ¶ 4, ECF No. 1, Ex. 1).  The mortgage covering the Goodman Property is held by Bank of America and is exclusively in Plaintiff's name. (Compl. ¶ 3).  The MSA required that Plaintiff execute a quit claim deed releasing her interest in the home to Bell and that Bell "refinance the home into his sole name" within three years of the execution of the MSA. (MSA ¶ 4).  Plaintiff alleges that she immediately executed the deed and that Bell is now the sole owner of the Goodman Property.

Over the next few years, a "made-for-TV drama" unfolded that allegedly saw Plaintiff thwarted by Defendants in her efforts to remove her name from the mortgage, or alternatively, to compel Bell to sell the Goodman Property.  In March 2012, Plaintiff attempted to negotiate a short sale with Bank of America, determining that Bell had no intention of refinancing the home. (Compl. ¶ 3).  Defendants Carpenter and Keller Williams were hired as the realtor and broker, respectively. (*Id.*).  Although the papers were prepared, Plaintiff claims that Bell derailed the sale because "he wanted to negotiate a full sale." (*Id.*).  Plaintiff alleges that Carpenter sided with Bell and the short sale deal dissolved. (*Id.*).

In June 2012, Plaintiff attempted to negotiate a deed in lieu of foreclosure deal with Bank of America, but Bell apparently refused to agree. (*Id.*).  Later that same month, Plaintiff alleges that Bell faked a quit claim deed pretending to transfer the Goodman Property to her.  When Plaintiff attempted to then sell the Property, she discovered that the deed was not a legal document.  Bell, however, allegedly refused to sign a legitimate deed that would have allowed Plaintiff to sale the Property. (*Id.* ¶ 4).

Plaintiff further alleges that Bell actually sought and received a loan modification of the mortgage covering the Property in Plaintiff's name sometime in 2012. (Compl. ¶ 6, at 7).

2

1   Plaintiff contends that Bell and Zittle faked her name and personal information in order to secure

2   a refinancing of the home in Plaintiff's name rather than Bell's. (*Id.*).

3        At this point, Plaintiff filed a motion in state court requesting an order from the court for

4   Bell to show cause why he had not complied with the MSA.  The state court made a number of

5   important findings.  First, it determined that Bell still had until November 2013 to refinance the

6   Goodman Property in his own name, which at that time meant that Bell's three years had not yet

7   run.  However, the court found that he had not been making payments on the mortgage since

8   December 2011; an obvious violation of the decree. (Order 6, ECF No. 1, Ex. 5).  The state court

9   further found that it was "unclear" whether Bell had, in fact, "refinanced the loan in [Plaintiff's]

10  name without her consent. (*Id.*).  After a hearing and order from the state court, Bell allegedly

11  continued to neglect his payments on the Property's mortgage, failed to refinance the home in his

12  name, and failed to sell the home.

13       On December 20, 2013, Plaintiff filed a lawsuit in federal court against Bank of America

14  alleging predatory lending, a case which was assigned to this Court. (*See Shepard v. Bank of

15  Am.*, No. 3:13-cv-00698-RCJ-VPC).  As part of that lawsuit, Plaintiff claimed that Bank of

16  America improperly allowed Bell to modify the mortgage on the Goodman Property in

17  Plaintiff's name without her consent. (*Shepard v. Bank of Am.*, No. 3:13-cv-00698-RCJ-VPC,

18  ECF No. 1-1, at 4–5).  That action was eventually settled and the Court signed the Order

19  dismissing the case with prejudice on January 22, 2015 pursuant to Plaintiff's and Bank of

20  America's stipulation of dismissal. (*Shepard v. Bank of Am.*, No. 3:13-cv-00698-RCJ-VPC, ECF

21  Nos. 46, 47, 48).  Less than a week later, Plaintiff filed this case, proceeding *pro se*. (ECF No. 1).

22       In the present action, Plaintiff appears to allege that Defendants harmed her collectively

23

24

1    as well as individually.[1]  Bell and Zittle allegedly defrauded Plaintiff by failing to assume the

2    Goodman Property mortgage and by securing a loan modification in her name without Plaintiff's

3    permission.  Plaintiff claims that this also constitutes identity theft.  She appears to allege that

4    Colvin committed fraud and conspiracy by assisting Bell in retaining the Property without

5    paying on the mortgage.  Plaintiff also claims that Colvin engaged in malpractice.  The

6    Complaint appears to allege that Carpenter and Keller Williams also participated in the

7    conspiracy to prevent Plaintiff from selling the Property.  It also claims that Carpenter and Keller

8    Williams were negligent in their performance as realtor and broker, though it sounds as though

9    the claim might be characterized as the tort of intentional interference with economic advantage.

10          Plaintiff seeks $10,000 each from Carpenter and Keller Williams for the harm they

11   allegedly caused. (Compl. ¶ 17).  Plaintiff also seeks $10,000 from Zittle, (*id.* ¶ 18), at least

12   $10,000 from Colvin (*id.* ¶ 20), and at least $10,000 from Bell, (*id.* ¶ 21).  Plaintiff also seeks an

13   order from this Court that Bell sell the Goodman Property. (*Id.* ¶ 22).

14          In response to the Complaint, Defendants Bell, Zittle, and Colvin filed Motions for

15   Demand for Security of Costs in the amount of $1,500—$500 per defendant—pursuant to NRS

16   18.130. (ECF Nos. 10, 11).  Defendants Carpenter and Keller Williams, however, moved the

17   Court for dismissal for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).

18   **II.    LEGAL STANDARD**

19          Federal Rule of Civil Procedure 12(b)(1) states that a court may dismiss a claim for lack

20   of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  While the defendant is the moving party

21   in a motion to dismiss, the plaintiff is the party invoking the court's jurisdiction.  Consequently,

22   "the plaintiff bears the burden of proving that the case is properly in federal court." *Wright v.*

23

24   _____
     [1] The Complaint does not specify which allegations are being brought against whom.  The Court has done its best to parse through the expansive Complaint and attach the relevant claims with the appropriate Defendants.

4

1   *Incline Vill. Gen. Imp. Dist.*, 597 F. Supp. 2d 1191, 1198 (D. Nev. 2009) (citing *McCauley v.*

2   *Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001)).  A motion to dismiss for lack of

3   subject-matter jurisdiction pursuant to Rule 12(b)(1) may take one of two forms. *Thornhill*

4   *Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  It may be a "facial"

5   challenge or it may be a "factual" challenge. *Id.*  "In a facial attack, the challenger asserts that the

6   allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."

7   *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "[I]n a factual attack, the

8   challenger disputes the truth of the allegations that, by themselves, would otherwise invoke

9   federal jurisdiction." *Id.*

10          If the movant's challenge is a facial one, then the "court must consider the allegations of

11  the complaint to be true and construe them in the light most favorable to the plaintiff." *Nevada ex*

12  *rel. Colo. River Comm'n of Nev. v. Pioneer Cos.*, 245 F. Supp. 2d 1120, 1124 (D. Nev. 2003)

13  (citing *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989)).  In this case, Defendants

14  challenge the Court's jurisdiction on the face of the Complaint.  They argue that the facts and

15  allegations contained in the Complaint fail to invoke federal jurisdiction.  *Safe Air for Everyone*,

16  373 F.3d at 1039.  Accordingly, the Court must take all facts in the Complaint as true and

17  construe them in the light most favorable to Plaintiff. *Pioneer Cos.*, 245 F. Supp. 2d at 1124.

18  **III.    DISCUSSION**

19          Defendants argue that Plaintiff has failed to establish subject-matter jurisdiction under

20  either federal-question or diversity jurisdiction.  The Court has to agree.  "Federal courts are

21  courts of limited jurisdiction.  They possess only that power authorized by Constitution and

22  statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "It is to be

23

24

presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted).

Federal courts have jurisdiction over civil actions "arising under the Constitution, laws, or treatises of the United States." 28 U.S.C. § 1331.  Whether a claim arises under federal law "must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986); *Hunter v. United Van Lines*, 746 F.2d 635, 639 (9th Cir. 1984).  Although no single, precise definition of "federal question" exists, it is "clear" that "cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Merrell Dow*, 478 U.S. at 808.  Federal-question jurisdiction may also be invoked where the vindication of a right under state law necessarily turns on some construction of federal law. *Id.*

The Complaint in this case fails to plead any private cause of action that arises under federal law.  Plaintiff refers to a total of three federal statutes in the Complaint—18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1001.  Each of these statutes, however, imposes criminal liability and do not provide a private cause of action.

Although it is possible that Plaintiff's allegations may constitute a violation of some federal law that offers relief to a private party, the Court cannot divine from the Complaint what law that might be.  And while federal courts construe *pro se* pleadings liberally, *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995), it is not the court's function to supply the law based on the facts alleged. *See Collins v. Reg'l Transp. of S. Nev.*, No. 2:14-cv-854-JCM-VCF, 2014 WL 7330943, at *3 (D. Nev. Dec. 19, 2014) (Mahan, J.) ("The court does not, as plaintiff suggests, have any duty to direct *pro se* plaintiffs to the laws that best support their claims . . . .").  Therefore, the Court finds that Plaintiff has failed to demonstrate federal-question jurisdiction.

Federal courts may also exercise subject-matter jurisdiction over civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332.  A federal court's diversity jurisdiction "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  This is known as "complete diversity." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

Moreover, where it is not facially evident from the complaint that more than $75,000 is in controversy, the pleading party has the burden to establish that the amount in controversy meets the jurisdictional threshold. *See Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).  "Conclusory allegations as to the amount in controversy are insufficient." *Id.* However, where the sum claimed by the plaintiff is "apparently made it good faith," the court should dismiss the case only if it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996) (citation omitted).

In this case, Plaintiff fails to demonstrate that diversity jurisdiction is present.  Nowhere in the Complaint does Plaintiff identify the domiciles of the various Defendants. *Lew v. Moss*, 797 F.2d 747, 749–50 (9th Cir. 1986); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 95 (2010) (recognizing that a corporation is domiciled in the state where its "nerve center" is located). There is therefore no way for the Court to determine whether complete diversity exists between Plaintiff and each one of the Defendants.

Furthermore, Plaintiff has not shown that the amount in controversy exceeds $75,000. Plaintiff seeks at least $10,000 from each of the five Defendants, which means she is claiming $50,000 at minimum.  That does not satisfy the statutory requirement. *Matheson*, 319 F.3d at

1091 (holding that it was not facially evident from the complaint that the controversy involved more than $75,000 where the plaintiff sought "'in excess' of $10,000 for economic loss, 'in excess' of $10,000 for emotional distress, and 'in excess' of $10,000 for punitive damages").

It is not clear from the Complaint what amount is actually in controversy here. Any award of damages would have to stem from the alleged fraud, conspiracy, negligence, and other asserted claims. However, it is unclear what exactly those damages would be. The amount in controversy cannot be the value of the Goodman Property because Plaintiff is not attempting to recover ownership thereof. Perhaps Plaintiff is seeking compensation for loan payments she was compelled to make to Bank of America as a result of Defendants' alleged activities. Or perhaps Plaintiff seeks recoupment for medical bills she has paid that would have otherwise been covered by the State if not for Bell's allegedly fraudulent loan modification in Plaintiff's name. On the face of the Complaint it is simply unclear (1) from where Plaintiff's damages arise and (2) what amount should be attached to the alleged harm.

Plaintiff attempts to rectify the Complaint's omission of the Defendants' domiciles and to increase the amount in controversy beyond $75,000 in her Response to the Motions to Dismiss. (*See* Pl.'s Resp. 1–2, ECF No. 16). Yet diversity jurisdiction must be affirmatively shown and the requisite citizenship of the parties must be alleged in the complaint. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936) (holding that a plaintiff "must allege in his pleading the facts essential to show jurisdiction"); *Chicago, Burlington & Quincy Ry. Co. v. Willard*, 220 U.S. 413, 420 (1911); *Barkhorn v. Adlib Assocs., Inc.*, 345 F.2d 173, 174 (9th Cir. 1965). Accordingly, information contained in Plaintiff's Response cannot serve as the basis for diversity jurisdiction. *See Ghazali*, 46 F.3d at 54 (holding that "*pro se* litigants are bound by the rules of procedure").

The Court, therefore, finds that the Complaint fails to establish subject-matter jurisdiction.  Defendants' Motions to Dismiss are granted.  However, the Court finds that Plaintiff should be given leave to amend the Complaint to see if she can cure the jurisdictional deficiencies identified by the Court. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (stating that leave to amend is denied only when it is clear that the deficiencies of the complaint cannot be cured by amendment).

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motions to Dismiss (ECF Nos. 13, 15) are GRANTED without prejudice.  Plaintiff is granted leave to amend the Complaint within thirty (30) days of the entry of this Order.  If an amended complaint is not filed within that time, this case will be dismissed with prejudice.

IT IS FURTHER ORDERED that Defendants' Motions for Demand for Security of Costs (ECF Nos. 10, 11) are DENIED as moot.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike (ECF No. 25) is DENIED as moot.

IT IS SO ORDERED.

Dated: __ March 27, 2015 ____

_____
ROBERT C. JONES
United States District Judge